## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

_____

)
T-MOBILE CENTRAL LLC and )
APC TOWERS III, LLC )
            )
           Plaintiffs, )
            )
v. )     Civil Action No. 6:19-cv-01162-EFM-ADM
            )
THE CITY OF WICHITA, )
      a Municipal Corporation, )
 And )
WICHITA CITY COUNCIL )
            )
           Defendants. )
_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND EXPEDITED TREATMENT

For its Complaint against Defendants The City of Wichita, Kansas ("City") and the Wichita City Council ("City Council" and, collectively "Defendants"), Plaintiffs T-Mobile Central LLC ("T-Mobile") and APC Towers III, LLC ("APC Towers" and, collectively "Plaintiffs"), by its undersigned attorneys, upon knowledge as to their own actions and dealings and upon information and belief as to the Defendants and their actions, alleges as follows:

### Nature of the Action

1.     This action arises out of Defendants' effective prohibition of T-Mobile's ability to provide personal wireless service to an area of the City of Wichita in violation of Section 332(c)(7)(B)(i)(II) of the federal Communications Act, 47 U.S.C. § 332(c)(7)(B)(i)(II) (the "Communications Act" or "Act"). Over half of the homes in the United States have "cut the cord" and obtain their telecommunications service solely from wireless providers, such as T-Mobile. To provide the service consumers demand, T-Mobile must build wireless facilities that

will provide wireless signal coverage and also adequate network capacity to accommodate the radical increase in use. But to do that, T-Mobile must construct more wireless facilities and those facilities must be in the areas where consumers demand service and with network capacity to accommodate the use.

2.    On September 27, 2018, the Federal Communications Commission ("FCC") issued a Declaratory Order in which it addressed precisely the type of situation raised in this case, recognizing that "[a]s more Americans use more wireless services, demand for new technologies, coverage and capacity will necessarily increase" and as a result that deployment must not be "stymied by unreasonable state and local requirements." *In the Matter of Acceleration of Broadband Deployment by Removing Barrier to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, 33 FCC Rcd. 9088, 2018 WL 4678555 at ¶ 23 (2018) (Sept. 27, 2018). The FCC rejected previous court-created standards under Section 332(c)(7)(b)(i)(II), which it concluded erroneously "place[d] more importance on broadly preserving state and local authority than is justified." *Id.* ¶ 40, n.97. The FCC specifically clarified that a local government effectively prohibits the provision of wireless service when its action materially inhibits or limits a wireless provider's ability to "engage in any of a variety of activities related to its provision of a covered service" including "densifying a wireless network, introducing new services or otherwise improving service capabilities." *Id.* ¶ 37.

3.    What Plaintiffs seek to achieve in this case is exactly what the FCC was addressing. T-Mobile suffers from a significant gap in its ability to provide service in the North Riverside neighborhood in the City of Wichita, driven primarily by inadequate network capacity to serve consumer demand. Thus, in this case, to "densify" T-Mobile's network and add the

necessary network capacity, Plaintiffs have undertaken a comprehensive investigation of potential sites for installation of the necessary facility.

4.      But Plaintiffs have encountered a general, "not in my back yard" ("NIMBY") opposition to wireless facilities in the target area.  Indeed, this case appeals the City's unlawful denial of Plaintiffs' *second* application to install a wireless facility in the area.  The second denial, now before the court, is Plaintiffs' application for a Conditional Use ("Conditional Use Application") to construct an 80-foot wireless communication facility on vacant, unused property zoned Limited Commercial ("LC" or "LC District"), located in the North Riverside neighborhood in the City of Wichita.  In response to generalized, NIMBY opposition to wireless facilities, the City denied Plaintiffs' first application and now the current, second application.

5.      Defendants' denial effectively prohibits T-Mobile's ability to provide personal wireless service in the vicinity of the proposed facility.  Accordingly, Defendants' denial violates the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7).  In addition to a declaratory judgment, Plaintiffs seek an order from this Court directing Defendants to grant Plaintiffs' Conditional Use Application for the proposed facility in accordance with Plaintiffs' rights under the Communications Act.

6.      Plaintiffs request expedited treatment of this complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## Parties

7.      Plaintiff, T-Mobile Central LLC, is a Delaware limited liability company and a wholly owned subsidiary of T-Mobile USA, Inc., a Delaware corporation with its principal place of business in Bellevue, Washington.  T-Mobile Central LLC is registered to do business in Kansas and maintains an office at 4533 Enterprise Drive, Oklahoma City, Oklahoma.  T-Mobile

Central LLC is the operating entity for T-Mobile USA in the Central Region, including the State of Kansas.  T-Mobile Central LLC owns and operates assets including cell sites used to provide Personal Communications Services (PCS) and Advanced Wireless Services (AWS), as defined by federal law.  T-Mobile Central LLC operates its wireless network using licenses issued by the Federal Communications Commission ("FCC") to T-Mobile USA and held by related entities. T-Mobile Central LLC provides wireless communications services including voice, data and wireless broadband internet services throughout the central United States as part of T-Mobile USA's national wireless network.

8.     Plaintiff APC Towers III, LLC ("APC Towers") is a Delaware limited liability company.  APC Towers is registered and authorized to do business in the State of Kansas.  APC Towers builds, owns, and operates wireless telecommunications facilities in throughout the United States.  Such telecommunications facilities support the antennas and equipment used by T-Mobile and other wireless carriers to provide personal wireless services.

9.     Defendant the City of Wichita, Kansas, is a duly authorized municipality constituted and existing under the laws of the State of Kansas.

10.     Defendant the Wichita City Council is a duly authorized unit of the City that has been delegated the authority, among other things, to grant applications for Conditional Uses for wireless communication facilities under certain circumstances pursuant to the Zoning Code.

**Jurisdiction and Venue**

11.     This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because of the existence of federal questions arising under the Communications Act of 1934, as amended by the Telecommunications Act of 1996.  The Court has authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b), since the Defendants each reside in this District, and the events giving rise to this action occurred in this District.

**Statement of Facts**

**Federal Statutory Control Over Wireless Siting**

13.    Section 332 of the Act, 47 U.S.C. § 332(c), governs federal, state and local government regulation of the siting of personal wireless service facilities such as the one at issue here.

14.    The Act provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Act may seek review in the federal courts and the court "shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

**The Wireless Communications Service Industry**

15.    T-Mobile provides commercial mobile radio services, personal and advanced wireless services, along with other telecommunications services, as those terms are defined under federal law, in the State of Kansas, which includes the City of Wichita.

16.    T-Mobile Central LLC, as the operating entity for T-Mobile USA, uses licenses issued by the FCC, pursuant to 47 U.S.C. § 151 to provide wireless service in the City of Wichita.

17.    APC Towers constructs and operates wireless support facilities, such as wireless towers, on which it leases space to providers of personal wireless services, such as T-Mobile.

18.    Section 151 of the Communications Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination … a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate

5

facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

19.     Consistent with these policy goals, T-Mobile seeks to provide myriad wireless services to local businesses, public safety entities and the general public.

20.     Likewise, to advance the national policies enumerated under 47 U.S.C. § 151 and repeatedly reiterated by the FCC, T-Mobile constructs wireless facilities that allow T-Mobile to create and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

21.     To provide reliable service to a user, coverage must overlap in a grid pattern resembling a honeycomb.  If T-Mobile is unable to construct a cell site within a specific geographic area, T-Mobile will not be able to provide reliable service to the consumers within that area.

22.     For a wireless network to perform, cell sites must be located, constructed and operated so that reliable service can be achieved.  If there is no functioning cell site within a given area or if the cell sites serving an area lack sufficient capacity to handle the amount of customer demand for limited wireless spectrum, there will be no reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of signal quality, dropped calls, and call connection failures.

23.     To determine where a new wireless facility is required, RF engineers use various techniques, including sophisticated computer programs, to complete a study, which shows where cell sites need to be located to provide reliable service.  The study analyzes the topography of the land, the coverage boundaries of neighboring cell sites, and other factors.  For a wireless network

to perform, cell sites must be located, constructed and operated so that reliable service can be achieved. If there is no functioning cell site within a given area, or if the cell sites serving an area lack sufficient capacity to handle the amount of customer demand for limited wireless spectrum, there will be no reliable service for customers within that area.

<strong>The Proposed Facility and Application Process</strong>

24.    Based upon research and analysis by its RF engineers, T-Mobile determined that it has a significant gap in its ability to provide service in the North Riverside area of the City.

25.    This gap is significant based on the population served and vehicular traffic in the area and must be remedied in order for T-Mobile to provide service to the targeted area.

26.    Initially, T-Mobile's RF engineers defined a search ring approximately one-half mile across that was centered around the vicinity of Woodland North and West 15th Street North.

27.    The area within the initial search ring is largely made up of small residential properties.

28.    In January 2018, Plaintiffs applied for a Conditional Use Permit to allow a 100-foot tall monopole on property located in a commercial area south of 13th Street North and east of Bitting Avenue (at 707 West 13th Street North). The City Council denied this request on May 2, 2018, on several grounds (the "Bitting Avenue Denial"). Attached hereto as Exhibit A is a true and correct copy of the Bitting Avenue Denial.

29.    The Bitting Avenue Denial stated that a monopole cell tower did not fit into the unique character of the neighborhood, which the Bitting Avenue Denial asserts is adjacent to an established neighborhood of historical significance within the City. It also stated that "[t]he City has expended a tremendous amount of resources to preserve the nature of this area including the

improvement to the Minisa Bridge and the walking path along the river, bike paths and improvement to the area parks."

30.     The Bitting Avenue Denial also stated that the proposed tower was located in an area of "heightened sensitivity due to it being next to the Little Arkansas River and the historically significant Native American[sic] regarding Meade Island."  The Bitting Avenue Denial further cited neighborhood opposition and concerns regarding the monopole tower's impact on the value of residential properties located near the site.

31.     After the City denied the Bitting Avenue proposed tower, Plaintiffs expanded their search.

32.     The surrounding area is mixed, with commercial uses dominating the intersection of 18th Street North and Woodland Avenue.  Residential uses exist in the north and southeast, and are prominent beyond the commercial uses at the intersection of 18th Street North and Woodland Avenue.

33.     Plaintiffs investigated suitable properties within the area that were appropriate for a wireless communications facility.  An appropriate candidate would have to remedy the gap in service, comply with the local zoning requirements, be leasable, and be capable of having a facility constructed.

34.     Plaintiffs determined that there are no existing communications towers or tall structures available in the search area that can accommodate co-location and remedy T-Mobile's significant gap in service.

35.     Plaintiffs investigated thoroughly the possibility of other viable alternatives and considered several other properties in the area.

36.     Plaintiffs consulted with the City Councilmember representing the district on the best alternative to remedy the gap in coverage.

37.     Plaintiffs evaluated and considered the following alternative sites located in the target area:

a.  Wichita North High, located in the Wichita Public Schools Unified School District No. 259 ("USD 259").  This site was ultimately rejected because USD 259 refused to lease space to T-Mobile.  There is an existing tower located on Wichita North High's property that previously supported USD 259's own wireless system, but that tower is not engineered to support commercial wireless facilities and therefore would have needed to be removed and rebuilt. Ultimately, USD 259 communicated to Plaintiffs' site acquisition agent, Mr. Ferris, that they do not want commercial wireless facilities on the property, generally, and therefore are not willing to enter into a lease for the installation of a commercial wireless facility on the property.

b.  Marshall Middle School, located in USD 259.  The school is set on a small tract of land and has no external buffering from the residential areas surrounding the site.  A tower located near the edge of the grounds could not meet the setbacks required by the Zoning Code.  Furthermore, this site was ruled out based on USD 259's rejection of the request to lease space at Wichita North High.  During discussions regarding Wichita North High, USD 259 also stated that it would not lease a site for a tower in this area because of the neighborhood opposition to the Bitting Avenue site.

c.  The 13th Street and Arkansas River commercial area.  This is a small commercial area with very limited space for a tower, making it difficult to meet the setbacks required by the Zoning Code.  When Plaintiffs approached the City about using this site, their site acquisition representative was told by Councilmember Claycomb that the City would not support this location, largely due to the site's proximity to the environmentally-sensitive Big Arkansas River.  Indeed, the location shares many of the same concerns that were the basis for the Bitting Avenue Denial.

d.  Indian Hills Church of the Nazarene, located at 1555 N McLean Blvd.  This site was rejected because the church would not allow a tower on its property since it was planning an expansion and would need all the available vacant ground

e.  The remainder of the area is zoned residential with small lots.

38.    After thoroughly evaluating alternative properties within the applicable search area, Plaintiffs concluded that the property at 902 West 18th Street North (the "Subject Property") was (1) in the search area; (2) in a zone that permitted wireless communications facilities; (3) had a property owner willing to lease a portion of land for the construction of a wireless communications facility; and (4) was suitable for constructing and maintaining a wireless communications facility.

39.    The Subject Property is located on the north side of West 18th Street North and on the west side of North Woodland Avenue.

40.     The Subject Property is zoned LC as defined by the Zoning Code.  A commercial building, which has at times been used for auto repair use, is currently located on the Subject Property.  It has been vacant and unused for many years.

41.     As the City requires a one-to-one setback from residential zoned property, it would not be possible to meet these setback requirements on any other viable parcels in the area.

42.     The Subject Property provides the least intrusive means of filling a significant gap in T-Mobile's ability to provide service in the North Riverside area of the City and is the only feasible plan to remedy the significant gap in service.

43.     Article III, section III-B.14 of the City's Zoning Code states that the purpose of the LC zone is to "accommodate retail, commercial, office and other complementary land uses." The Zoning Code includes "Wireless Communication Facilit[ies]" as a category of Commercial Uses that are "permitted by-right in the LC District," subject to section III-D.6.g.

44.     Article III, section III-D.6.g covers "Use Regulations" related to "Wireless Communication Facilities."  It provides that "[a] Wireless Communication Facility shall be evaluated in terms of conformance to the guidelines in the 'Wireless [Communication] Master Plan'."

45.     A Wireless Communication Facility that does not conform to the Location/Design Guidelines in the Wireless Master Plan may be approved for a Conditional Use.

46.     The Subject Property is outside the area authorized for administrative approval of Wireless Communication Facilities; therefore, the Zoning Code requires a Conditional Use for the Proposed Facility in the LC District at the proposed location.  Section V-D of the Zoning Code sets out the required review procedures for Conditional Uses.

47.    The review criteria for evaluating a proposed Conditional Use are set forth in Section V-D.8 and Section V-C.8 of the Zoning Code.  The Zoning Code states that "[n]ot all of the criteria must be given equal consideration by the Planning Commission or Governing Body in reaching a decision."  The criteria are:

a.    The zoning, uses, and character of the neighborhood;

b.    The suitability of the subject property for the uses to which it has been restricted;

c.    The extent to which removal of the restrictions will detrimentally affect nearby property;

d.    The length of time the subject property has remained vacant as zoned;

e.    The relative gain to the public health, safety, and welfare as compared to the loss in value or the hardship imposed upon the applicant;

f.    The conformance of the requested change to the adopted or recognized comprehensive plan or other plans or policies being utilized by the City or County;

g.    The impact of the proposed development on community facilities;

h.    The opposition or support of neighborhood residents; and

i.    A consideration of the recommendations of professional staff.

48.    APC Towers entered into an Option for Easement agreement with the owner of the Subject Property.

49.    Plaintiffs' site acquisition representative, Greg Ferris, of Ferris Consulting, communicated with City Councilmember Cindy Claycomb, who is the Councilmember who

12

represents the District where the Bitting Avenue tower was proposed and also where the Proposed Facility is located.

50.     Mr. Ferris exchanged emails with Councilmember Claycomb to discuss issues or concerns regarding the location of a tower.  Pursuant to this exchange, Plaintiffs understood that Councilmember Claycomb considered the Subject Property to be an acceptable choice for placement of the proposed wireless communication facility.

51.     Because the Subject Property, and indeed the surrounding area, are in the district represented by Councilmember Claycomb, Councilmember Claycomb's support is critical to the selection of a site for T-Mobile's wireless communication facility.  Upon information and belief, there would be little chance of gaining approval from the City Council if she opposed the Conditional Use Application because members of the City Council historically defer to the position of the Councilmember in whose district the tower is proposed and due to the number of votes needed.

52.     On January 18, 2019, T-Mobile and APC Towers (through APC Telecom Services, LLC) submitted an application for a Conditional Use Permit (the "Conditional Use Application") to allow an 80-foot Wireless Communication Facility at the Subject Property (the "Proposed Facility").

53.     The Proposed Facility is an 80-foot monopole structure.  It will be of neutral color, much like other towers within the community, and will be enclosed with an 8-foot, solid fence.  Because the Subject Property is surrounded by property that is zoned LC, no landscaping is proposed.  The easement area for the Proposed Facility is approximately 45-feet by 35-feet in size and located on the north side of the existing building at the western edge of the Subject Property.  Access to the site will be from a leased access drive entering from Woodland Avenue.

54.     Plaintiffs did not need to seek a variance because the Proposed Facility is within the height permitted by the Zoning Code.

55.     Pursuant to the Zoning Code, property zoned LC allows for structures 80-feet tall if they meet the setback criteria.  Section IV-C.5.b provides that Wireless Communications Facilities "shall not exceed a Height equal to the distance to the Lot Line of property zoned TF-3 or more restrictive," which would include property zoned rural, single-family, and two-family residential.

**Plaintiffs' Application is Denied Despite the Planning Commission's Recommendation That It Be Approved On Two Different Occasions**

56.     The Wichita-Sedgwick County Metropolitan Area Planning Commission ("Planning Commission") is a duly authorized unit of the City that has been delegated the authority, among other things, to review and approve Conditional Uses for wireless communication facilities under the Zoning Code for Wichita-Sedgwick County ("Zoning Code").

57.     The Planning Commission first reviewed the Conditional Use Application on March 7, 2019.  At the March 7, 2019 meeting, approximately seven local residents spoke in opposition to the Conditional Use Application.

58.     At the March 7, 2019 meeting, the Planning Commission voted to approve the Conditional Use Application by a 10-1 vote.

59.     The Planning Commission's decision is the final action on an application for Conditional Use except when, among other things, "one or more valid protest petitions are filed opposing the action of the Planning Commission."  When that happens, the Planning Commission's action shall be in the form of a recommendation that is forwarded to the City Council for final action.

60.     In this case, protest petitions were submitted by local residents and their legal representatives against the Conditional Use Application.

61.     On April 8, 2019, Mr. Ferris sent a letter on behalf of Plaintiffs to Jeff Longwell, the Mayor of the City of Wichita, regarding the Conditional Use Application.  In the letter, Mr. Ferris reiterated the reasons already provided in the Conditional Use Application materials for why T-Mobile requires the Proposed Facility at the Subject Property to remedy a significant gap in service.  The letter also restated the ways in which the site satisfies the criteria outlined in the Zoning Code for approval of Conditional Uses.  Attached hereto as Exhibit B is a true and correct copy of Mr. Ferris's April 8, 2019 letter to Mayor Longwell.

62.     On April 9, 2019, the City Council first considered Plaintiffs' Conditional Use Application for the Proposed Facility.

63.     Despite the Planning Commission's recommendation that the Conditional Use Application be approved, the City Council voted unanimously to return the case to the Planning Commission for reconsideration with the directive to consider new information provided by the opponents.

64.     On April 18, 2019, the Planning Commission reconsidered the Conditional Use Application.

65.     Prior to the April 18, 2019 Planning Commission hearing, some citizens submitted to the Planning Commission letters, statements, and additional written comments regarding their opposition to the placement of the Proposed Facility.  These letters and comments expressed a general object to wireless facilities in the area and expressed concern regarding "the public perception that cell towers pose a health risk" and "unknown potential health effects."

66.     After hearing new testimony and reviewing all additional information submitted by the opponents and T-Mobile, the Planning Commission approved a motion to resubmit its original recommendation to approve the Conditional Use Application with conditions by a vote of 10-2-1.

67.     The Planning Commission issued written Staff Reports following the March 7, 2019 Planning Commission Meeting, and the April 18, 2019 Planning Commission rehearing recommending the Conditional Use Application be approved with conditions.  The Staff Reports each stated that "the 'Community Investments Plan 2015-2035' depicts the Subject Property's location as being generally 'residential.'  This particular use would not be out of character with the spirit and intent of the plan's acceptable uses for this location given that the subject property is commercially used and adjacent to other established commercial uses."

68.     The Staff Report also stated that the Proposed Facility meets the general intent of the Wireless Communication Master Plan, and "complies with the overall spirit and intent to accommodate both the expansion of wireless communication capabilities within the City . . . [and] to mitigate the impacts associated with the new development."  Attached hereto as Exhibits C and D are true and correct copies of the Planning Commission Staff Reports recommending approval of T-Mobile's Conditional Use Application.

69.     On May 14, 2019, the City Council once again considered Plaintiffs' Conditional Use Application during its regular meeting.  Despite the Planning Commission's repeated recommendations and Staff Reports recommending approval, the City Council, by motion of Councilmember Claycomb, voted 5 to 2 to deny the Conditional Use Application.

70.     On May 16, 2019, the City sent a letter to Plaintiffs informing them that their

Conditional Use Application had been denied.  Attached hereto as Exhibit E is a true and correct

copy of the City's written decision denying the Conditional Use Application.

**Recent State and Federal Mandates Limit and Restrict the Factors and Issues That May Be
Considered When Evaluating the Placement of New Wireless Communication Facilities**

71.     As Defendants recognize, both the State of Kansas and the FCC have recently

limited the factors and issues that may be considered by the City in evaluating the placement of

the Proposed Facility.

72.     In *In the Matter of Acceleration of Broadband Deployment by Removing Barrier*

*to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, 33 FCC Rcd.

9088, 2018 WL 4678555 (2018) (Sept. 27, 2018) (the "*FCC 2018 Order*"), the FCC issued a

declaratory ruling that definitively interpreted the "effective prohibition" language of Section

332(c)(7)(B)(i)(II).  The FCC declared that the standards adopted by the Tenth Circuit and other

courts applying Section 332(c)(7)(B)(i)(II) were incorrect.  *Id.* n.94.  Instead, the FCC declared

that "an effective prohibition [of service] occurs where a state or local legal requirement

***materially inhibits a provider's ability to engage in any of a variety of activities related to its***

***provision of a covered service.***"  *Id.* ¶ 37 (emphasis added).  The FCC made clear that the City

effectively prohibits the provision of wireless services if it inhibits or limits T-Mobile "not only

when filling a coverage gap ***but also when densifying a wireless network, introducing new***

***services or otherwise improving service capabilities***."  *Id.* ¶ 37 (emphasis added).  The FCC also

made clear that an effective prohibition includes inhibiting a provider from deploying the

"performance characteristics" of its choosing.  *Id.* n.86.  The *FCC 2018 Order* also declares that

local governments cannot deny an application for a wireless site based on the alleged existence

of alternative locations.

17

**The City's Denial Violates the Communications Act**

73.     The City's denial of the Conditional Use Application violates the Communications Act.

74.     There is no evidence disputing the existence of a significant gap in T-Mobile's service in the vicinity of the Subject Property.

75.     Plaintiffs have presented testimony and evidence to the Planning Commission and City Council, as well as in the Conditional Use Application, concerning T-Mobile's significant gap in service.

76.     Plaintiffs provided testimony and evidence in the Conditional Use Application materials, as well as prior to and during the hearings on March 4, 2019, March 7, 2019, April 9, 2019, and April 18, 2019, that the Proposed Facility meets the requirements for a Conditional Use approval under the Zoning Code.

77.     Plaintiffs presented testimony and evidence to the Planning Commission and City Council that they thoroughly investigated the possibility of other viable alternatives, but that no other feasible plan was available.

78.     There is no record evidence refuting Plaintiffs' demonstration that they investigated thoroughly the possibility of other viable alternatives before concluding that no other feasible plan was available.

79.     There is no evidence demonstrating the existence of viable alternatives that would remedy the significant gap in T-Mobile's services and no viable alternative exists or if one does exist it would not be less intrusive that the Proposed Facility.

80.     The City's final action denying the Conditional Use Application was issuance of the written notice of denial, which was provided to the applicants and interested parties on May 16, 2019 (the "Denial").

81.     This Complaint is timely filed within thirty days of the City Council's final Denial pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

<u>**COUNT I**</u>
**(Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) – Effective Prohibition)**

82.     Plaintiffs incorporate by reference and realleges the foregoing factual allegations in paragraphs 1 through 81 as if fully set forth herein.

83.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government of instrumentality thereof ... shall not prohibit or have the effect of prohibiting the provision of personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i)(II).

84.     In the *FCC 2018 Order*, the FCC issued a declaratory ruling that definitively interpreted the "effective prohibition" language of Section 332(c)(7)(B)(i)(II).  The FCC declared that the standards adopted by the Tenth Circuit and other courts applying Section 332(c)(7)(B)(i)(II) were incorrect.  *Id.* n.94.  Instead, the FCC declared that "an effective prohibition [of service] occurs where a state or local legal requirement ***materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service.***"  *Id.* ¶ 37 (emphasis added).  The FCC made clear that the City effectively prohibits the provision of wireless services if it inhibits or limits T-Mobile "not only when filling a coverage gap ***but also when densifying a wireless network, introducing new services or otherwise improving service capabilities***."  *Id.* ¶ 37 (emphasis added).  The FCC also made clear that an effective prohibition includes inhibiting a provider from deploying the "performance

characteristics" of its choosing.  *Id.* n.86.  The *FCC 2018 Order* also declares that local governments cannot deny an application for a wireless site based on the alleged existence of alternative locations.

85.    The *FCC 2018 Order* is currently in effect, and it governs Plaintiffs' claim under 47 U.S.C. § 332(c)(7)(B)(i)(II).

86.    Under the *FCC 2018 Order*, T-Mobile has identified an area in which T-Mobile needs to install a wireless facility to provide coverage, network capacity, densify its network to provide reliable service.  The City's Denial of Plaintiffs' Conditional Use Application materially inhibits T-Mobile's ability to install its facilities and provide the services at levels it deems appropriate.  Accordingly, the City's Denial effectively prohibits T-Mobile from providing personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

87.    In addition, or in the alternative, even following the standard for claims under Section 332(c)(7)(B)(i)(II) previously adopted by the Tenth Circuit, the City's Denial of the Conditional Use Application effectively prohibits T-Mobile from providing personal wireless service in violation of Section 332(c)(7)(B)(i)(II).

88.    T-Mobile has a significant gap in personal wireless service in the area surrounding the Proposed Facility.

89.    There is no existing structure or property in or near the search area in the vicinity of the Proposed Facility that is both reasonably available and technologically feasible to remedy T-Mobile's significant gap in personal wireless service in the area.

90.    Plaintiffs investigated thoroughly the possibility of other viable alternatives but no other feasible plan is available to remedy T-Mobile's significant gap.

91.     As discussed above, Plaintiffs thoroughly investigated multiple other properties, prior to settling on the Subject Property, including Wichita North High, Marshall Middle School, the 13th Street and Arkansas River commercial area, and the Indian Hills Church of the Nazarene.  Each of these sites either rejected requests to lease space for the tower, or were unsuitable for building an 80-foot monopole.

92.     The City's 2018 Bitting Avenue Denial also materially inhibited T-Mobile's ability to address the same significant gap in service affecting the North Riverside area of the City.

93.     The Zoning Code's setback requirements for residential zoned property means any other viable parcels in the area for locating a wireless facility would be overly intrusive and untenable.

94.     There are no viable alternatives to the Proposed Facility or less intrusive means of remedying T-Mobile's significant gap in service in the North Riverside area of the City.

95.     Moreover, the City's Denial of the Conditional Use Application, when viewed together with the Bitting Avenue Denial, reflects a clear pattern of opposition to any wireless facility that would remedy T-Mobile's significant gap in service and allow it to densify its wireless network, introducing new services, and otherwise improve service capabilities.  The City's actions materially inhibit and effectively prohibit T-Mobile from providing personal wireless service in the area surrounding the Proposed Facility.

96.     Consequently, the City's Denial is in violation of, and preempted by, Section 332(c)(7)(B)(i)(II) of the Communications Act, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order directing the City to approve the Conditional Use Application for the Proposed Facility.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

1.      An expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2.      A declaration and judgment that Defendants' Denials have the effect of prohibiting T-Mobile from providing personal wireless service in violation of and preempted by 47 U.S.C. § 332(c)(7)(B)(i)(II);

3.      An order requiring Defendants to grant the Conditional Use Application and thereby approve the Proposed Facility;

4.      An order directing Defendants to issue all ancillary approvals and permits necessary for the operation of the Proposed Facility;

5.      An award of Plaintiffs' costs, including reasonable attorneys' fees; and

6.      Such other and further relief as the Court may deem just and proper.

## REQUEST FOR DESIGNATION OF PLACE OF NON-JURY TRIAL

COMES NOW the Plaintiffs and request a non-jury trial be held in the U.S. District Court located in Wichita, Kansas.

Respectfully Submitted,

T-MOBILE CENTRAL LLC and APC TOWERS LLC

By their attorneys,

*s/ Robert W. Kaplan*
Robert W. Kaplan, Esq.
Kansas Bar No. #05220
Klenda Austerman, LLC
1600 Epic Center
301 N Main
Wichita, KS 67202-4816
(316) 267-0331 (phone)

22

(316) 267-0333 (facsimile)
rkaplan@klendalaw.com


T. Scott Thompson (pro hac vice forthcoming)
Courtney T. DeThomas (pro hac vice forthcoming)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW, Suite 800
Washington D.C. 20006
202-973-4200
scottthompson@dwt.com
courtneydethomas@dwt.com


Dated: June 17, 2019.